IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH ROBERT HUSKEY,<br><br>  Plaintiff<br><br> vs.<br><br>PAM AHLIN, et al.,<br><br>  Defendants. | Case No.: 1:09-cv-01576 AWI JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT LASLEY'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 42). |

Plaintiff Kenneth Huskey ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On September 8, 2009, Plaintiff initiated this civil rights action against several Defendants. (Doc. 1). Defendant Lasley is the only remaining defendant. Before the Court is Lasley's Motion for Summary Judgment. (Doc. 42).

At the time of the incident giving rise to Plaintiff's complaint, Plaintiff was a pre-trial detainee. Plaintiff complains that Lasley violated his Fourteenth Amendment right to timely dental care when Lasley delayed Plaintiff's dental care. (Doc. 8 at 5, ¶14; Doc. 8 at 7-8, ¶ 25). In his motion, Lasley contends that he is entitled to judgment because there is no evidence he violated Plaintiff's constitutional rights or, if he did, he is entitled to the protections of qualified immunity. Plaintiff opposed the motion on October 22, 2012 (Docs. 46-47)[1] and Defendant has

---

[1] On September 13, 2012, Plaintiff requested and was granted a 30-day extension of time to file an Opposition to Plaintiff's motion. On October 22, 2012, Plaintiff filed his Response to Defendant's Undisputed (continued…)

replied.  (Doc. 50).  Having reviewed the arguments and evidence of both parties, it is recommended that Defendant's motion be **GRANTED**.

## I.  UNDISPUTED FACTS

The case involves a series of events that began on or about April 1, 2009 at Coalinga State Hospital and continued until June 2009.  At all times relevant to Plaintiff's complaint, Plaintiff was a pre-trial detainee housed at Coalinga State Hospital (CSH) pursuant to California's Sexually Violent Predator Act.  (Undisputed Fact (UF) 1).[2]

The parties agree that the following facts are undisputed:

1. Plaintiff resided in Unit 5 from his admission on December 22, 2008 to August 4, 2009.  (Docs. 42-2 and 46, UF 4).

2. Defendant Lasley was a Registered Nurse on Unit 5 from March 2008 to May 26, 2009. (Docs. 42-2 and 46, UF 17).

3. Plaintiff approached Lasley on or about April 1, 2009 and informed Lasley that he had lost at least one filing the day before and was concerned about losing his tooth.  (Docs. 42-2 and 46, UF 30)

4. The on-site dental clinic at CSH set forth certain criteria for nurses to use to determine whether a patient had an emergency need for a dental appointment.  (Docs. 42-2 and 46, UF 34).

5. Lasley was aware of the criteria required by the CSH dental clinic.  (Docs. 42-2 and 46, UF 34).

6. The criteria required the nurses to determine whether the patient had bleeding, swelling, sensitivity to hot or cold, pain, or trouble eating or drinking.  (Docs. 42-2 and 46, UF

---

(…continued)
Statement of Material Facts and his Declaration in Support of his Response.  (Docs. 46-47).

[2] The Court refers to the Statement of Undisputed Facts (Doc. 42-2) and Plaintiff's Response to Defendant's Separate Statement (Doc. 46) by referencing the specific Fact at issue.  The Court refers only to Facts or portions thereof that are not disputed by Plaintiff or to Facts which are deemed undisputed based upon Plaintiff's failure to provide evidence that a genuine dispute of fact exists.  Where the Court references a fact that Plaintiff has disputed, but Defendant has objected thereto, the Court will note its evidentiary ruling.

Toward this end, the Court **OVERRULES** Defendant's objection to Plaintiff's Declaration (Doc. 47) on the basis that it is not a sworn statement made under oath.  Plaintiff signed the declaration under penalty of perjury. Doc. 47 at 8.

2

35).

7. Lasley performed an assessment of Plaintiff's mouth which included "checking for bleeding, swelling, sensitivity to hot, cold or hard foods." (Docs. 42-2 and 46, UF 37 and 42).

8. Lasley looked at the area in Plaintiff's mouth that Plaintiff was complaining about. (Docs. 42-2 and 46, UF 41, 42, 43).

9. Based upon Lasley's conversation with Plaintiff, his assessment and observations, Lasley did not believe Plaintiff was suffering pain or discomfort at the time. (Docs. 42-2 and 46, UF 43).

10. Plaintiff did not ask Lasley for any pain medication to address his dental complaints. (Docs. 42-2 and 46, UF 44).

11. Immediately after Plaintiff complained to Lasley about his teeth, Lasley called the dental clinic and relayed the findings from his assessment. (Docs. 42-2 and 46, UF 49).

12. Lasley asked the dental clinic if Plaintiff could be scheduled for an immediate dental appointment. (Docs. 42-2 and 46, UF 49).

13. Lasley told Plaintiff that the dental clinic was going to get back to him. (Docs. 42-2 and 46, UF 50).

14. During the assessment and while Lasley was addressing Plaintiff's dental complaints, Lasley was very polite to Plaintiff. (Docs. 42-2 and 46, UF 50).

15. Lasley was informed that Plaintiff had a dental appointment scheduled for May 5, 2009. (Docs. 42-2 and 46, UF 51).

16. Lasley informed the sick-call nurse of Plaintiff's scheduled appointment. (Docs. 42-2 and 46, UF 56).

17. Plaintiff's dental appointment was re-scheduled several times after April 1, 2009. (Docs. 42-2 and 46, UF 66, 70).

18. During his time on Unit 5, Lasley did not have the ability to schedule dental appointments. (Docs. 42-2 and 46, UF 38, 40).

19. Lasely's responsibility regarding dental complaints was to assess the patient according to the dental clinic's criteria and report the results to the dental clinic. (Docs. 42-2 and

46, UF 35, 37).

20.     Plaintiff underwent a dental examination by Dr. Pham on June 10, 2009. (Docs. 42-2 and 46, UF 70).

21.     Dr. Pham's June 10, 2009 examination revealed several missing teeth and numerous caries (cavities), but no missing filings. (Docs. 42-2 and 46, UF 74 and 82).

22.     On June 10, 2009, Dr. Pham documented that Plaintiff's only complaint of pain related to his lower right molar (tooth #31). (Docs. 42-2 and 46, UF 72-73).

23.     At his June 10, 2009 visit with Dr. Pham, Plaintiff did not complain of unbearable pain, being awake at night due to pain, or an inability to eat. (Docs. 42-2 and 46, UF 77).

24.     Dr. Pham documented that at the time of the examination, Plaintiff was missing his back four teeth (#17, 18, 19 , 20) on the lower left side of his mouth. (Docs. 42-2 and 46, UF 80). *See also* dental anatomy diagram,[3] Doc. 42-3 at 4).

25.     At the June 10, 2009 appointment, Dr. Pham believed Plaintiff's lower right molar (#31) was Plaintiff's most significant problem, was causing Plaintiff discomfort, and should be the first priority. (Docs. 42-2 and 46, UF 87).

26.     At the June 10, 2009 appointment, Dr. Pham believed Plaintiff's lower left teeth (#21 and 22) did not require immediate treatment. (Docs. 42-2 and 46, UF 85).

27.     During the April 2009 conversation between Plaintiff and Lasley, Plaintiff told Lasley he would pay for an outside dentist, if he could not be seen at CSH, but refused to pay transportation costs or any costs for the guards. (Doc. 42-2 and 46, UF 46).

28.     Lasley had no authority to approve patient requests to travel outside the facility for a medical service that was available within the hospital. (Doc. 42-2 and 46 at UF 47).[4]

29.     While a patient at CSH, Plaintiff has not lost any teeth and all of his dental

---

[3] Pursuant to Federal Rules of Evidence, Rule 201, the Court takes judicial notice of the Universal Numbering System for Teeth and names of teeth as depicted in Exhibit 1 attached to Defendant's Request for Judicial Notice. (Doc. 42-3).

[4] Plaintiff states that he "cannot admit or oppose" this statement, as he did not have a copy of the transportation policies. (Doc. 46 and 42-2, UF 47). Plaintiff's statement that he "knew that CDCR prisoners can obtain . . . outside medical appointments if they are willing to pay" lacks foundation. Defendant's Objection to that portion of Plaintiff's Declaration is **SUSTAINED**. (Doc. 51 at 5, ¶10).

4

problems were resolved satisfactorily. (Doc. 42-2 and 46, UF 134).

## II.  SUMMARY JUDGMENT STANDARDS

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987). The party seeking summary judgment demonstrates it is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support

1  of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the
2  opposing party is not required to establish a material issue of fact conclusively in its favor; it is
3  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
4  parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec.
5  Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an
6  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
7  Celotex, 477 U.S. at 322.

8  Significantly, even if the motion is unopposed, a court cannot grant summary judgment
9  solely because no opposition has been filed. Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th
10 Cir. 1994). The court must apply standards consistent with Federal Rule of Civil Procedure 56 to
11 determine whether the moving party has demonstrated that there is no genuine issue of material
12 fact and judgment is appropriate as a matter of law. Henry v. Gill Indus., Inc., 983 F.2d 943, 950
13 (9th Cir. 1993). In resolving a motion for summary judgment, the Court examines the evidence
14 provided by the parties, including pleadings depositions, answer to interrogatories, and
15 admissions on file. *See* Fed. R. Civ. P. 56(c).

16 **III. DISCUSSION**

17 **A.  Rule 8(a)(2) - Right Side vs. Left Side**

18 Plaintiff complains in his First Amended Complaint (FAC) that he told Defendant Lasley
19 he was missing filings in two teeth.  (Doc. 8 at 7).  The Parties disagree about which teeth
20 Plaintiff initially complained to Lasley about in April 2009.  Defendants assert that Plaintiff's
21 initial allegations related to teeth on the lower left side on his mouth: specifically, teeth #21 and
22 #22.  (Doc. 42-2, ¶42 (citing Lasley Dec., Doc. 42-4, at 9, ¶20).  Plaintiff contends that his
23 complaints always related to the lower right side of his mouth: specifically, tooth #31.  (Doc. 47
24 at 5, ¶21).

25 A review of Plaintiff's FAC, filed March 29, 2010 and signed under penalty of perjury
26 (Doc. 8 at 59), demonstrates that Plaintiff's initial complaint related to teeth on the lower left side
27 of his mouth. Plaintiff's FAC alleges that he "informed Defendant Lasley that he had lost two
28 filings: the "L-lower incisor and a L-lower molar."  (Doc. 8 at 5, ¶14).  In his governmental

claim, submitted July 1, 2009 and attached to Plaintiff's FAC as an exhibit, Plaintiff alleges that "on or about April 1, 2009, I lost two filings (a lower left molar and upper right bicuspid)." (Doc. 8 at 32, ¶18). Neither document referred to problems with the lower right side of his mouth.

Notably, Defendant's file a motion to dismiss on June 3, 2011, and pointed out that Plaintiff complained to Dr. Pham of pain in a different tooth than that which Plaintiff discussed with Lasley. (Doc. 21 at 12). In response to the Motion to Dismiss, Plaintiff did not clarify (as he attempts to do here) that his pain always related to the lower right side of his mouth and that this was the same tooth he complained to Lasley about. (Doc. 22). Rather, Plaintiff's Opposition to the Motion to Dismiss just generically alleged that he complained to Lasley about tooth pain and that treatment for his dental pain was delayed. (Doc. 22 at 7). Plaintiff had until March 16, 2012 to amend his complaint and clarify his allegations, but did not do so. (Doc. 33). Thus, Plaintiff's testimony here (Doc. 46, ¶31, ¶41 and Doc. 47, ¶21) that he complained to Lasley about pain on the lower right side of his mouth on April 1, 2009 is a new factual allegation.[5]

Notably, despite the significant effort Defendant devotes to the issue of Plaintiff making various and consistent claims related to his teeth, Plaintiff fails to explain the inconsistencies between his FAC, his governmental claim and his current assertions. Instead, he ignores this and merely iterates that his complaints related to the lower right teeth.

Federal Rules of Civil Procedure, Rule 8, states that a civil complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must provide "the defendant [with] fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, the "fair notice" requirement envisioned by Rule 8 makes it inappropriate to consider Plaintiff's new factual allegations for two reasons: (1) the new

---

[5] At Plaintiff's May 31, 2012 deposition, one month before discovery closed, Plaintiff testified that the "problem in question" was on the right side. (Doc. 33; Doc. 42-8 at 8, lines 3-10; Doc. 42-8 at 11, lines 6-10).

7

allegations are inconsistent with the allegations of his FAC and (2) the new allegations were not made in response to Defendant's motion to dismiss but in response to their motion for summary judgment (after a fair and reasonable opportunity to conduct discovery had occurred). If the Court permitted Plaintiff to alter his claim at this late stage of the action, it would deprive Defendant of the fair notice envisioned by Fed.R.Civ.P. 8.  *See* Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir.2006); Oliver v. Ralphs Grocery Co. (9th Cir. 2011) 654 F.3d 903, 908. However, without approving of condoning Plaintiff's current position, as set forth below, the specific location of the problematic teeth does not create a genuine issue of material fact and does not impact the Court's analysis.

### B.  Due Process Legal Standards and Application

The Due Process Clause of the 14th Amendment protects a civil detainee's right to adequate conditions of confinement, including the right to "adequate food, shelter, clothing, and medical care" as well as "reasonably safe conditions of confinement." *See* Youngberg v. Romeo, 457 U.S. 307, 314–16, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In determining whether the state has met its Constitutional duty to provide reasonably safe conditions, the Court accords the decisions made by the appropriate professional a "presumption of correctness." Id. at 324. To incur liability, a professional must make a decision that "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," Id. at 323; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir.1992). Thus, the Court's inquiry is limited to "two questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and (2) whether the decision reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the decision was not based upon professional judgment." Braninburg v. Coalinga State Hosp. (E.D. Cal., Sept. 7, 2012) 2012 WL 3911910 (citing Houghton 965 F.2d at 1535).  "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable

choices should have been made." Youngberg, 457 U.S. at 321.[6]

### 1) Lasley was a professional entitled to deference

Defendant Lasley has presented evidence that he was a qualified professional entitled to deference. (Doc. 42-4 at 2-6); Doc. 42-4 at 9, ¶19). Lasley testifies that he is a registered nurse and has been so employed since 2005. (Doc. 42-2 at 2, ¶3). Lasley also produces evidence that he has been employed with CSH since March 2008. (Doc. 42-2 at 2, ¶4). During that time Lasley has served as the sick call nurse, floor nurse, and Wellness and Recovery Plan (WRP) nurse. (Doc. 42-4 at 2, ¶4). Lasley testifies that he was responsible for conducting medical assessments, performed basic nursing care, submitted requests for on-site dental clinic appointments for newly admitted patients, and carried out doctor's orders as needed. (Id.)

As part of Lasley's work on Unit 5, he was able to request dental appointments for patients who made specific requests for an appointment. (Doc. 42-2 at 8, ¶17). Lasley was familiar with the criteria prescribed by the dental clinic for relaying an inmate's dental complaints/symptoms. (Doc. 42-4 at 9, ¶19, Doc. 46 at 10, Doc. 42-2 at 7, UF 34). Such evidence is sufficient to meet Defendant's burden of proving that Lasley is a professional entitled to deference. Since Plaintiff does not dispute the evidence regarding Lasley's qualifications and has not submitted any evidence to contradict Defendant's testimony on the issue, Plaintiff has not demonstrated a disputed issue of material fact regarding whether Lasley is a qualified professional whose decision would be entitled to deference.

### 2) Lasley did not act with conscious indifference

The parties agree: 1) Plaintiff complained to Lasley that he lost a filling; 2) Plaintiff pointed to the tooth that had been bothering him and Lasley looked at that area; 3) Lasley called the dental clinic immediately thereafter; 4) the dental clinic asked Lasley whether Plaintiff could eat and drink, whether there was pain, whether there was sensitivity to hot or cold and whether

---

[6] In addition to the Fourteenth Amendment analysis, Defendant also argues that Plaintiff cannot meet the objective and subjective factors required under the Eighth Amendment analysis. (Doc. 42-1 at 27-30). Because Plaintiff has only alleged due process violations, the Court will only analyze Plaintiff claims under the Fourteenth Amendment Due Process Clause, as it did in screening Plaintiff's complaint (Doc. 10 at 4-6; Doc. 12) and deciding Defendant's motion to dismiss. (Doc. 25 at 3-6)

1  there was swelling or bleeding; 5) Lasley reported his findings to the dental clinic and denied
2  Plaintiff suffered from these symptoms; 6) the dental clinic provided Plaintiff with an
3  appointment date about 30 days later. (Doc. 42-4 at 9-11, ¶¶18-29).

4  In addition, Lasley asserts he asked questions of Plaintiff specifically related to whether
5  Plaintiff had experienced bleeding, swelling, sensitivity to hot or cold or problems eating or
6  drinking.  Plaintiff asserts in his opposition that Lasley did not ask these questions.  However, at
7  his deposition, when was asked whether Lasley asked him any questions about his tooth or what
8  he was feeling, Plaintiff responded by stating, "he (Lasley) might have but I don't recall what
9  they were." (Doc. 42-8 at 14, lines 6-8). Because a party cannot create an issue of fact by an
10 affidavit contradicting his *prior* deposition testimony, Plaintiff cannot now dispute this testimony
11 to create an issue of fact regarding whether Lasley exercised professional judgment when he
12 performed the assessment. *(See* Kennedy v. Allied Mut. Ins. Co. (9th Cir. 1991) 952 F.2d 262,
13 266 (explaining that the purpose of a motion for summary judgment as a procedure for screening
14 out sham issues of fact would be defeated by allowing a plaintiff who had been thoroughly
15 deposed to later sign a declaration contrary to his/her prior testimony).

16 In addition, when Lasley asserts in his Fact 43 that he concluded Plaintiff was not in pain,
17 Plaintiff responds only that had Lasley verbalized this, "*Plaintiff would have corrected him.*"
18 (Doc. 47 at 6)  Plaintiff does not assert affirmatively that he reported to Lasley that he was
19 suffering pain, had experienced sensitivity to hot or cold and was having difficulty eating.

20 Finally, Lasley asserts that when he looked at the area pointed to by Plaintiff, he did not
21 observe any bleeding or swelling in the area and based upon his assessment and conversation with
22 Plaintiff, Lasley did not believe Plaintiff was suffering pain.  Once again, Plaintiff counters this
23 only by asserting Lasley did not ask questions.  However, as noted above, the Court refuses to
24 consider this evidence because it contradicts his prior deposition testimony.

25 Notably, in his FAC, Plaintiff contends that Lasley did not exercise his professional
26 judgment because Plaintiff's appointment was scheduled for more than thirty days after Plaintiff
27 requested the dental appointment. (Doc. 8 at 5, ¶14).  Given that Lasley did not have the ability
28

10

1  to decide when Plaintiff would be seen by the dental clinic[7], the only issue is whether Lasley
2  performed a reasonable assessment and whether Lasley relayed his findings to the dental clinic.
3  (Docs. 42-2 and 46, UF 35, 37, 38, 40).  The only evidence Plaintiff supplies to dispute Lasley's
4  description of his assessment is his testimony that Lasley made his observations "independently
5  without Plaintiff's input and without asking Plaintiff anything." (Doc. 46 at 11, ¶37; Doc. 46 at
6  13, ¶42). Once again, this assertion is contrary to that Plaintiff made at his deposition on May 31,
7  2012 and, therefore, is disregarded.  Consequently, the Court finds Plaintiff has failed to show
8  there is a genuine issue of a material fact regarding whether Lasely failed to his professional
9  judgment in such a way as to constitute conscious indifference.

10  In addition, the accuracy of Lasley's assessment is further supported by the fact that Dr.
11  Pham's examination of Plaintiff showed that his lower left teeth (#21 and 22)—those Plaintiff
12  complied about in his FAC and one of which he complained about in his governmental claim--
13  were virgin teeth that had never had filings before.  (Doc. 42-5 at 5, ¶15).  Though Dr. Pham
14  diagnosed cavities on the two lower left teeth, he did not believe the teeth required immediate
15  treatment and Plaintiff did not voice any complaints related to those teeth.[8] (Docs. 42-2 and 46,
16  UF 85). Plaintiff's lower left teeth were successfully filled in September 2009 (three months after
17  Plaintiff saw Dr. Pham and five months after Plaintiff reported to Lasley he believed he lost
18  filings from those teeth). (Doc. 42-2 and 46, UF 119).

19  **C. Plaintiff has not Demonstrated a Constitutional Violation for**
20  **Refusing to Allow him to Consult a Private dentist**

21  Plaintiff contends he was deprived of due process because he was not allowed to pay for
22  treatment by a private dentist. However, Plaintiff has no right to treatment by a private dentist.
23  Cal.Code Regs. tit. 15 § 3354(a)(c)(f); *see also* Spector v. California Dept. of Corrections 2012
24  WL 5838994 (E.D. Cal., Nov. 16, 2012).  Here, Lasley has produced evidence that he was not

---

[7] Plaintiff states that he "cannot admit or oppose" this statement, as he did not have a copy of the nursing policies. (Doc. 46 at 11, ¶38).

[8] Plaintiff admits that he did not voice any complaints about his lower left teeth to Dr. Pham at his first visit on June 10, 2009; however, he speculates that Dr. Pham should have been aware of the complaints from the grievances Plaintiff submitted. (Doc. 46 at 23, ¶83). However, Plaintiff has not demonstrated that Dr. Pham was aware of these grievances related to the lower left side of his mouth.

authorized to allow Plaintiff to obtain dental care outside the hospital. (Doc. 46, UF 47, Doc. 42-4 at ¶23). Plaintiff states that he "cannot admit or oppose" this statement, as he did not have a copy of the transportation policies. (Doc. 46 and 42-2, UF 47). However, Plaintiff's attempts to rebut Lasley's evidence by declaring he "knew that CDCR prisoners can obtain . . . outside medical appointments if they are willing to pay." As set forth in footnote 4 above, Plaintiff fails to establish a proper foundation for this statement.

### D. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity standard allows for mistakes in judgment by protecting all but the plainly incompetent or those who knowingly violate the law. Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589, citing Malley v. Briggs, 475 U.S. 335, 341 106 S.Ct. 1092 (1986). To determine whether qualified immunity is appropriate, the Court can consider whether Plaintiff has demonstrated a constitutional violation and whether the subject violation is a clearly established right. *See* Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

This Court has not found a constitutional violation, therefore it need not decide the issue of qualified immunity.

### IV. RECOMMENDATION

Based on the foregoing, the Court recommends,

1.   That the motion for summary judgment by Defendant Lasley be **GRANTED**;

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations."  Replies to the objections shall be filed within fourteen days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 15, 2013**                    **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE